UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEBRA L. HOKEL,<br><br>                Petitioner,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>                Respondent. | Case No. 2:10-CV-00160-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court for its consideration is Petitioner Debra L. Hokel's ("Petitioner") Petition for Review (Dkt. 1) of the Respondent's denial of social security benefits, filed July 22, 2010. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental

MEMORANDUM DECISION AND ORDER - 1

Security Income under Title II[1] on June 28, 2005, alleging disability commencing on July 7, 2001, as a result of chronic low back pain. Petitioner's application was denied initially and on reconsideration. A hearing was held on July 19, 2007, before Administrative Law Judge ("ALJ") Hayward Reed, who heard testimony from Petitioner and Vocational Expert Sharon Welter. ALJ Reed issued a decision finding Petitioner not disabled on February 11, 2008, and Petitioner timely requested review by the Appeals Council, which denied her request for review on January 27, 2010.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g). At the time of the hearing, Petitioner was fifty years of age. Petitioner completed a high school education, and her prior work experience includes work as a construction laborer and postal carrier, and also in a plant nursery.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date. At step two, it must be determined whether the claimant suffers from a severe

---

[1] Petitioner alleged a disability onset date of July 7, 2001, and was last insured through December of 2003. Accordingly, she must establish she was subject to a disability expected to last for a continuous twelve month period either on or before December of 2003.

**MEMORANDUM DECISION AND ORDER - 2**

impairment. The ALJ found Petitioner's chronic low back pain after having three back fusions severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for a listing level impairment. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner was not able to perform her past relevant work as either a construction laborer, plant nursery worker, postal carrier, or physical therapy trainee. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. The ALJ found that, based upon Petitioner's RFC, she could perform sedentary occupations such as cashier II, telemarketer, and sewing machine operator.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to

**MEMORANDUM DECISION AND ORDER - 3**

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flatten v. Secy. of Health and Human Serve.*, 44 F.3d 1453,

**MEMORANDUM DECISION AND ORDER - 4**

1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flatted*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner believes the ALJ erred in assessing Petitioner's RFC. Specifically, Petitioner contends that the ALJ failed to properly evaluate the opinions of treating physicians Bret Dirks, M.D. and Scott Magnuson, M.D., because the ALJ rejected the treating physicians' opinions that Petitioner was disabled in favor of the opinions of examining physicians and state agency reviewing physicians. Petitioner alleges also that

the ALJ failed to properly assess her credibility in rejecting her testimony about the severity, duration, and limiting effects of her pain, and if her testimony was credited she would be precluded from all work. Respondent contends that the ALJ presented sufficient reasons for rejecting the opinions of Petitioner's treating physicians, and that there was substantial evidence in the record supporting the ALJ's finding that Petitioner was not entirely credible.

1.     **Physician Testimony**

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d

502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

Several physicians, including orthopedist Dr. Dirks and pain management specialist Dr. Magnuson, treated Petitioner after her third back surgery on October 17, 2001, performed to correct problems related to two prior back surgeries. (*See* AR 223.) Dr. Dirks preformed the surgery and managed Petitioner's post surgical orthopedic care, while Dr. Magnuson treated her chronic pain symptoms with a panoply of prescription medication. After the surgery, Petitioner was placed in a back brace and given a bone stimulator as well as a walker to assist with ambulation. (AR 284--85; 194; 197; 196.) Dr. Dirks was of the opinion that the fusion from L3 to S1 was successful, and Petitioner was

**MEMORANDUM DECISION AND ORDER - 7**

making "excellent progress," ambulating well, and had adequate strength as of February 7, 2002. (AR 189.) By March 8, 2002, Dr. Dirks believed Petitioner was doing "reasonably well," that she still reported back pain, but her leg pain was "pretty much gone." (AR 187.)

On July 18, 2002, Dr. Dirks wrote in his progress note that Petitioner's pain had reached a plateau, and that her pain had gone down significantly compared with prior to surgery. (AR 177.) However, Dr. Dirks believed Petitioner would continue to have pain "which would inhibit her ability to proceed with any sort of work. I continue to believe that she is in a rehabilitation situation, where she needs to continue doing her exercises and physical therapy. . . ." (AR 177.) On June 30, 2003, Dr. Dirks's progress note indicated Petitioner could begin working light duty three to four hours per day, including drive time. (AR 238.) On December 24, 2005, Dr. Dirks drafted a letter indicating, in his opinion, that Petitioner was "disabled on or before December 31, 2003," but without further detail. (AR 156.) On March 24, 2006, Dr. Dirks signed a letter drafted by Petitioner's attorney in which Dr. Dirks acknowledged that Petitioner would be limited to work days consisting of less than two hours in duration and would be expected to miss a number of days of work each month due to pain. (AR 165; *see also* AR 238.) Dr. Neal, Petitioner's primary care physician, was also of the opinion on January 6, 2006, that Petitioner was "completely disabled," and had been for some time, most likely after her back surgeries. (AR 155.)

**MEMORANDUM DECISION AND ORDER - 8**

The Court finds that the ALJ gave clear and convincing reasons for rejecting Dr. Dirks's opinions regarding Petitioner's disabled status and ability to work. The ALJ noted that, at no time during the period at issue between January 2001 and December 2003, did any treating physician indicate Petitioner was disabled and unable to work. Dr. Dirks, on June 30, 2003, indicated that Petitioner could start back to work, albeit on a reduced part time schedule. Although the ALJ considered the 2005 and 2006 opinions of Drs. Dirks and Neal, the opinions were given little weight considering the conflicting evidence in the record presented by two independent medical examinations, an independent functional capacity assessment, and inconsistencies in the physicians' own records.

Specifically, the ALJ relied on three independent medical examinations performed on May 4, 2001, September 9, 2003, and December 18, 2003. In all three independent medical examination reports, the physicians both before and after Petitioner's third surgery, performed on October 2001, reported that Petitioner could perform sedentary work with sufficient postural accommodations. On September 9, 2003, neurologist Dr. Stump was of the opinion that Petitioner could sit for two hours, stand for three hours, and tolerate three hours of walking during an eight hour work day, occasionally lift ten pounds, was restricted from bending, and could not squat, kneel, crawl or climb. (AR 517, 533.) Dr. Brunjes, an orthopedist, concurred with Dr. Stump's assessment. (AR 534) Dr. Brunjes's findings further indicated Petitioner could walk on her heels and toes without limitation with a normal gait, and while she experienced discomfort with range of motion,

**MEMORANDUM DECISION AND ORDER - 9**

she had no radicular symptoms in her lower extremities. (AR 536–537.)

In addition, the ALJ's RFC analysis considered the conclusions of the Functional Capacity Evaluation performed by Kootenai Medical Center over two consecutive days on April 28 and, 2003. (AR 262, 64, 66.) During the testing, the examiner indicated Petitioner gave maximal and consistent effort, and her performance was consistent between day one and two. (AR 262.) Further, although Petitioner reported pain, she had her symptoms under control and exhibited "no overt pain behaviors," demonstrated "smooth and coordinated movement," "good functional recovery," and her level of functioning appeared consistent with the demands for jobs such as cashier II and salesperson. (AR 263.)

The ALJ relied additionally on Dr. Magnuson's progress notes. On December 11, 2002, Dr. Magnuson examined Petitioner and noted Petitioner reported her pain at an average of 3, had a fairly good activity level, and although found it difficult, she was able to drive from Post Falls to her appointment in Coeur d'Alene. (AR 173.) Dr. Magnuson reported also that Petitioner's pain was fairly well controlled with methadone. (AR 173.) On January 12, 2004, Dr. Magnuson again reported Petitioner's pain was reasonably controlled with methadone, and her gait was normal. (AR 448.)

Finally, the ALJ noted that the state agency physician opined that there was no twelve month period during Petitioner's dates of eligibility in which she was unable to perform at least sedentary work. (AR 157--164). Dr. Coolidge noted that Petitioner could

**MEMORANDUM DECISION AND ORDER - 10**

lift ten pounds, stand or walk at least two hours, and sit for six hours during an eight hour work day.

An ALJ is not bound to accept the opinions of treating physicians where, as here, the ALJ gave clear and convincing reasons for rejecting their opinions. These reasons included findings from independent medical examinations and functional examinations, as well as conflicts between Dr. Magnuson's reports that Petitioner's pain was well controlled and Dr. Dirks's and Dr. Neal's assessments, both of which were rendered long after the period of disability at issue. Accordingly, the Court finds that the ALJ did not commit error in rejecting the opinions of Petitioner's treating physicians.

**2.     Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and

**MEMORANDUM DECISION AND ORDER - 11**

convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

Petitioner reported that she was in constant pain, inhibiting her ability to perform

**MEMORANDUM DECISION AND ORDER - 12**

routine activities of daily living, requiring her to take a nap once or twice a day, and mandating that she shift position while seated every ten minutes. Petitioner reported also that she had difficulty sleeping, which was secondary to pain experienced during the night, could not stand for any length of time, nor walk long distances. The vocational expert was of the opinion that, if Petitioner's testimony were true, she would be precluded from all work.

The ALJ properly rejected Petitioner's subjective reports of her pain's limiting effects. Specifically, the ALJ cited conflicting evidence in the record in support of his adverse credibility finding. For example, despite reporting a high level of pain on October 23, 2001, a short time after surgery, Petitioner during the same consultation reported her pain was at level two on the pain scale. (AR 284--85.) On October 31, 2001, Petitioner denied she had trouble sleeping. (AR 194.) And, despite reporting radicular pain in her lower extremities, Petitioner reported on March 8, 2002, that her leg pain was "pretty much gone." (AR 187.) On June 6, 2002, Petitioner presented to the emergency room with a headache seeking pain medication, and was observed "ambulating with ease," with "no evidence of [sic] hint of back pain at the time." (AR 270.)

On December 11, 2002, Petitioner reported her pain at level three on the pain scale, with no radiating pain, and Petitioner confirmed at the hearing that she agreed with that assessment. (AR 173, 568.) On June 9, 2003, Petitioner presented to her primary care physician complaining of acute pain, but was reportedly observed as not being in acute

**MEMORANDUM DECISION AND ORDER - 13**

pain and walking freely. (AR 395.) Petitioner was able to travel on a 4,000 mile road trip in or about September of 2003, although she reported a corresponding increase in pain. (AR 230). Yet her exam on that date was physically unremarkable. (AR 230, 66.) On December 15, 2003, Petitioner reported her pain at three on the pain scale, and that her activity was fairly high with her two sons home. (AR 228.)

Other medical records indicated Petitioner was exercising, including a note on July 11, 2005, that a recent flare up was due to her bicycle riding. (AR 381.) Her physical therapist noted on May 7, 2008, that physical therapy was helping, she was making significant progress, and she had the potential to make more progress. (AR 29.) By July 11, 2008, Dr. Neal, her primary care physician, noted that Petitioner looked like she was feeling better and had lost fifteen pounds by increasing her activity and controlling her diet. (AR 37.)

Dr. Magnuson consistently reported that Petitioner's pain was well controlled on her medication regimen, specifically methadone therapy. (AR 66, 194, 173, 292, 324, 448.)

The ALJ considered the contrary reports of Petitioner's activity level, discrepancies between Petitioner's self-reports and the reports and observations of her treating physicians, as well as Dr. Magnuson's opinion that Petitioner's pain was well controlled on drug therapy. The reasons the ALJ gave for finding Petitioner not credible are clear and convincing, and supported by substantial evidence in the record as recounted

**MEMORANDUM DECISION AND ORDER - 14**

herein. The Court will not substitute its opinion for that of the ALJ.

## CONCLUSION

Because the ALJ found Petitioner's testimony not credible and accepted the opinions in the record assessing Petitioner capable of a limited range of sedentary work, the ALJ found Petitioner not disabled. The ALJ's decision was not the product of legal error, and will be upheld, as discussed above.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)  The Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED**

2)  Plaintiff's Petition for Review (Dkt. 1) is **DISMISSED**.



DATED: September 19, 2011

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge